Judge Underwood
delivered the Opinion of the Court.
The lessor of the plaintiff claimed the land in controversy under two grants to William Hays — one feefcrinjf date in May, 1813, the other in June, 1801.
The defendant claimed under a grant to Jeremiah Moore, of two thousand acres, dated in August, 1785.
The lessor obtained a verdict and judgment, and the defendant has appealed.
It is clear, that the verdict and judgment arc erroneous, unless the lessor, and those under whom he claims, have had such a continued adverse possession of the land in controversy as to toll the right of entry founded *26 on the senior grant. The first and most important enquiry, therefore, relates to the possession.
Moore, in February, 1794, conveyed an undivided 'third part of the said two thousand acres to James French, in consideration of his services in surveying, registering &c."
In September, 1794, a deed was executed by Moore, the patentee, by Withers Smith, by Tli. Lewis and the said French, by which deed the tract of two thousand acres was divided into four lots. The most northern lot was assigned to Withers Smith, and contained six hundred sixty six acres and two thirds. The next lot, towards the north, was assigned to James French, and contains six hundred sixty six acres and two thirds. The next lot was assigned to Withers Smith, and contained three hundred thirty three acres and one third ; and the remaining lot, to the " south, containing'three hundred and thirty three acres arid one third, was assigned to Thomas Lewis. One question stated is, whether this deed inter partes, and which seems to have been designed as a deed of partition, passed the title from Moore, the patentee, to the other parties.
In February, 1814, the heirs of Withers Smith conveyed the eastern half of his lot of three hundred thirty three acres and one third to Hardage Smith; who, in May, 1826, conveyed the same to Jones, the appellant. The land thus conveyed to Jones constitutes the subject of controversy.
It seems from the proof, that French, claiming one tJ?ird|jof the two thousand acres, under an executory contract, settled two men upon the tract — one named Hancock, the other Anderson, with a view to take possession of his undivided third part, prior to the year 1794 ; that Withers Smith and French, in the fall of 1794, went upon the two thousand acre tract, and, by marked boundaries, divided the tract among those entitled to it, in the manner stated in the deed of September, 1794. In this division, the improvements of Hancock and Anderson were included in Smith’s northern lot of six hundred sixty six acres and two thirds. No one had possession, by actual enclosure, of any part of *27 Smith’s lot of three hundred thirty three acres and a third, except Conley, and he had a “very small piece” enclosed,,when the division was made, claiming under Hays.
A man named Steen proved, that, in the fall of the year in which Morgan’s station was taken by the Indians, (which event, as shewn by other testimony,'took place April 1st, 1793,) under a contract with Hays for fifty acres, he built a house, and settled on it. He cut the house logs in the summer, with permission from Hays. Hancock was living on Moore’s tract when Steen first went to the place he improved. Steen’k improvement was within the interference between the claims of Moore and Hays; but nc part of his fifty acres embraced any of the land in Smith’s lot of three hundred thirty three acres and a third.
A man named Bridges, in the summer of 1794, cut house logs, and, in the fall of that year, settled, claiming to hold under Hays, within the interference, and upon that part of Moore’s claim allotted to French. No part of the enclosure of Bridges embraced any land within the boundaries of Smith’s lot of three hundred thirty three acres and a third. Bridges, however, contract* ed with ■ Hays for six hundred acres of land, and the boundaries of the six hundred acres did interfere with Smith’s lot of three hundred thirty three acres and a third. In the fall of 1796, Bridges, settled a tenant named Maberry on the land now in contest. In 1802 or 1803, B. Thomas, acting as agent for Withers Smith, put Dinsmore and Durham in possession of the; place where Maberry settled, and the tenants of Smith, and those claiming under him, have been in possession ever since, gradually extending the improvements.
Arthur Conley, in the fall of 1793, built a half faced camp, and cut and collected house logs, and, in Februa* ry, 1794, built his house and settled with his family upon a hundred eighteen acres and three fourths, designated on the connected plat, claiming under Hays. This hundred eighteen acres and three fourths interferes with Smith’s three hundred thirty three acres and a third. Conley’s dwelling house was out side of Moore’s line.
' Alan tllord who settles a tenant, without bounds, is in possession to the extent of his claim. But if the tenant is restricted, by rnetes^bounds, téf'a part only of the land, the landlord’s possession, by this tenant, is in like manner restricted. So, where the proprietor of a tract sells a portion of it, .designated by metes § bounds, and the vendee enters, his possession, depending npon the quo animo of his entry,which must have been to take possession of his own land merely, is restricted to his own boundaries, and has no eifect as an entry upon, or possession of, the rest of the tract.
*28 In 1793, a man named McQueen settled on Smith’s three hundred thirty three acres and a third, in the bend of the creek,, and, in 1794, enclosed ten or twelve acres, claiming, “ as ike witness understood,” about fifty acres under Hays.
In the spring of 1795, a man named Berry settled below the bend of the creek, under Arthur Conley, and near his hundred eighteen acres and three quarters. He enclosed five or six acres, and raised a crop of corn. This is the place where Thomas Foster lives, as tenant to Jones, upon the three hundred thirty three and a third acres lot of Smith.
McQueen gave up his possessions to W. Bridges, and he transferred them to Arthur Conley.
In the spring of 1793, W. Cook cut and collected Jiousé logs, and, in the fall of the same year, built his house, and- moved his family upon his two hundred and ten acres, designated on the connected plat, and which lie had bought from Hays. Neither Cook’s house, nor any part of his enclosures, interfered with Smith’s three hundred thirty three acres-and a third, although part of his enclosures extended over the line of the two thousand acres survey of Moore.
In 1795, T. Dale settled on Cook’s two hundred and ten acres, under a purchase from him. His house was out side of Moore’s line, but be cleared and fenced a field over the line on Lewis’s lot, in three or four years after he settled. His improvement did not run into Smith’s lot. Dale and his widow have continued in possession of this land ever since its first settlement.
In 1814, Arthur Conley occupied the field in the bend of the creek settled by McQueen, and another field on the opposite^side of the creek, both within Smith’s lot of three hundred thirty three acres and a third.
The plaintiff in ejectment must recover upon the strength of his own title. If, therefore, Chiles and the heirs of Hays had no right to the possession of the land in contest, in consequence of the actual occupancy of the land, as manifested by the foregoing facts, they could not recover in this suit, according to law, in virtue of the junior grants. We shall enquire how far the right *29 of entry, under the patent to Moore, was tolled by the occupancy of those who settled and claimed under Hays, in the manner aforesaid.
where co-tenants make partition, and hold. their shares in severalty, if a junior patentee, whose claim covers the whole tract, or more than one of the shares, makes an entry upon the land, bis possession does not extend beyond the boundaries of the share upon which, his entry is- made, and the other shares are unaffected by it; for one co-tenant, after partition, is not bound to protect the allotments of the others. .
The possession and settlement of Steen could not extend beyond his fifty acres ; and as these did not interfere with the three hundred thirty three, acres and a third allotted to W. Smith, the possession and settlement of Steen cannot confer any right upon the lessors of the plaintiff to the land in contest, unless the entry of Steen upon his fifty acres, as the vendee of Hays, did, by operation of law, put Hays in the,possession in fact of the whole interference between his claims and that of Moore. Such a conclusion, from such premises, is not sustained by any authority or adjudged case known to us, and is, we think, unsupported by the reason and analogies of the law. The extent of- possession depends upon the quo animo of the entry. It cannot be supposed that Steen intended to extend his possession beyond his purchase, and how his limited possession can be made a possession in fact of lands not actually occupied by the vendor, it would be hard to shew upon- any legal principle. A landlord who settles á tenant., wilhout bounds, upon a tract, is in possession to the limits of the claim. A patentee extending shelter to an occupant whose possession is meted and bounded, acquires thereby a possession only to the limits of the occupant’s claim. The doctrines of the law, well settled by former adjudications, if applied between vendor and vendee, would limit the vendor’s possession to the boundary claimed by the vendee, and these settled doctrines could only apply in those cases where the vendee restored the land and gave up his possession to the vendor. We do not perceive in the settlement of Steen any thing to stengthen the claim of the lessors of the plaintiff, or to give them title.
The settlement and possession of Bridges, as vendee of Hays, outside the lines of Smith’s three hundred *30 thirty three acres and a third, can have no effect in favor of the lessors of the plaintiff. He was evicted by French, claiming under Moore. But it is contended that Bridges, by entering upon the six hundred acres outside of Smith’s lines, acquired an actual possession to the extent of. the whole. Suppose he did ; there is nothing in the record which shews the position of the six hundred acres, or to prove that it covered all the land in contest; and if this be the foundation of, the recovery, it cannot be sustained, because of the' uncertainty. But it does not follow,.under the facts proven, that his settlement gave him possession coextensive with the limits of the six hundred acres. If the two thousand acre tract of Moore was actually divided, and a deed of partition executed conveying the lots to the several claimants, before Bridges settled' upon his purchase, then his after-settlement upon the lot of French would amount to an ouster of French only. The settlement and improvements made on French’s lot, under such a state of case, would not lay a foundation for barring the right of entry into his lot by Smith. Where a tract of land is divided among several claimants, no one is bound to protect the lot of another from disseizors, intruders or trespassers. The several claimants are- not bound, after the division, to take notice of any settlement or trespass which does not immediately affect his particular lot. His right of entry upon his lot cannot be tolled by the actual possession of the whole or part of a different lot. The effect of the partition is to convert the parcels held by the different claimants into as many distinct tracts, and-the entry of a junior patentee will not give possession' of any, except that within the boundaries of which he enters.
A claimant cannot avail himself of the possession of a former tenant Whose title he has not acquired.
Let it be conceded, however, that the settlement of Bridges was before the partition, and that he acquired the possession to the extent-of his six hundred acres, and that his six hundred acres covered the whole, or nearly all the land in contest. Mrs. Bridges proves, that Hays made her husband a deed for the land. There is nothing in the record to shew that Bridges or his heirs ever reconveyed the land to Hays, or his heirs, or to Chiles. *31 Nor does it appear that the lessors of the plaintiff have, in any manner, become entitled to the possession oí Bridges, or the possessory right to the land, which his possession conferred, supposing it to have continued for twenty years. If any one is entitled to the land under the settlement and possession of Bridges, it is his heirs, in the present aspect of the case.
The possession, to bar an adverse entry, by time, must be continued— uninterrupted : for the law will not allow that timéis progressing against a claimant, when he can find no occupant on the land, to bring suit against.
That Bridges was possessed of -part of the land in contest, by his tenant, Maberry, as far back as 1796, is clearly proved, and need not be regarded as conceded for argument merely. In 1802 or 1803, Smith’s agent put Dinsmore and Durham in possession of this place. How Thomas, the' agent, effected the dispossession' of Maberry, or his landlord, Bridges, does not appear. It would' seem, however, from the proceedings in the record, that this dispossession Was regarded by the circuit court as extending to the ground actually enclosed by Maberry, for to that extent the judgment is released. According to this idea, Bridges, by his tenant, having acquired the actual possession of the whole, in 1790, and having been dispossessed’of a small part only, in 1802 or 1803, continued to possess the residue, and thus twenty years possession may have run in his favor. This view is incorrect. “ To make the bar of twenty years- possession operative and effectual to destroy a right of entry, it is necessary that the possession claimed as adverse should be shewn to be continued and. uninterrupted. Or, in other words, if there is any period during the twenty years, in which the person having the right of entry could not find an occupant on the land, again.st whom he could bring and sustain his ejectment, 'that period' cannot be counted.as a part of the twenty years. For it. would be absurd to suppose that a bar was progressing against him at a moment when the law afforded him no action.” This is the language of the court, in the case of Trotter vs. Cassuday &c. 3 Marsh. 366. When the tenant of Bridges was turned out, and the tenants of Smith put in, no matter by what means, (unless subject to an estoppel, which does not appear,) against whom could Smith, or the person entitled to enter under the patent of Moore, *32 bring their ejectment ? Certainly not against Bridges or those claiming under him, when they were not possessed. It follows conclusively, that Bridges and those claiming under him, have not had such a continued uninterrupted possession as will bar the right of entry, or confer a right of possession.
The possession acquired under a ha. fa.upon a judgment in ejectment, has relation back to the com mcncementofthesuit; and the time be tween -that and the execution of the ha. fa. (tho1 the execution lias been long delayed by injunction,or otherwise,) cannot be counted to make up twenty years of adverse possession.
A statement by a witness of what he understood — not stahe8 underetood it; as that a ldaimingtetefo much land, or T^ütle, “'at witness under-uncertain1^-In-foundation of1» verdict.
Arthur Conley’s possession is to be considered as embracing the settlements of McQueen and Berry as well as his own. Take the whole together, and they confer no right, on the lessors of the plaintiff, because, cause, in 1814, before Arthur Conley or those under whom he claimed, had been twenty years in possession, Hardage Smith instituted an action of ejectment, and prosecuted it successfully to a' judgment, against the heirs of Conley and Hays, in 1818, and these were removed by writs of habere facias, in 1829 and 1830 ; or rather Chile,s, who had-come into possession after the institution of the suit, was turned out, and the possession delivered to Jones, in pursuance of the directions of Smith. It is too late now to enquire whether this judgment was right or wrong. It must be regarded as settling Smith’s right to the possession as against the heirs of Conley and Hays ; and, consequently, when possession was taken under Smith, in 1829 and 1830, it related back to the institution of the suit in February, 1814. . Thus the time running between the commencement of the suit, and the delivery of possession under the writs of habere facias cannot be counted to make up twenty years of continued adverse possession.
The proof is, that a very small part of Conley’s imppovement had been extended into Smith’s three hunr area thirty three acres and .a third when the division Moore’s two thousand acres took place, in the fall of 1794, and that his house was built in February of that J'eaC outside of Moore’s line. ■ The particular time when the enclosure was extended over the line is uncertain, and it is possible, though we think very improbable, that it was extended over prior to the 18th of February, 1794. If so, Conley had possession of his hundred eighteen acres and three quarters to the extent of the interference with Smith’s three hundred thirty *33 three acres and a third, for twenty years prior to the institution of the suit. McQueen settled in 1793, claiming, as the witness understood, fifty acres under Hays.— Supposing the possession of McQueen to have been continued by Conley down to the commencement of the suit, there would have been twenty years adverse possession of this fifty acres, if it. had been laid off by metes and bounds. Taking the testimony in the most favorable light to the lessors, it does not justify the verdict and judgment to the extent rendered. For upon this evidence, the recovery could not, upon any legal principle, be extended beyond the interference covered by the hundred eighteen acres and three quarters, claimed by Conley, and the fifty acres claimed by McQueen. As to the settlement of McQueen, however, the testimomony is too indefinite. It does not appear that the fifty acres claimed was meted and bounded, and the declaration of the witness.; that he understood McQueen claimed under Hays, is no evidence that such was the fact. Who did he understand it from ? It may be hearsay merely-.
If two eject'merits, by diffe rent plaintiffs, w‘th different titles, arependingat the same lune,against die who.unconnec^od]dwl* to bothpltls.;# having^recovl ered his judg^possession"; after which the other also recovers — the latter cannot turn out the former, by virtue of his habere facias against the defendants to both suits. The right, as between these two successful claimants, must be tried in a suit between them, before either can turn the other out.
Berry’s settlement was within less than-twenty years prior to the institution of the suit. Cook’s settlement cannot give the lessors any right. If any one has right growing out of Cook’s settlement, to the ground common to Cook’s two hundred and ten acres, and Smith’s three hundred thirty three acres and a third, it is his heirs, and not the lessors of the plaintiff'.
In 1817, Chiles, as lessor, instituted an action of eject- ment, against Conley’s heirs, to recover the land possessed by them and their ancestor. In 1818, Chiles obJ . a i tained a verdict and judgment. An appeal was proseented, but the judgment was affirmed in 1820. Can this proceeding, at the instance of Chiles, give him, or' the lessors in the present action, a right to recover ? If two actions of ejectment be pending at the same time, against the same terre-lenant, prosecuted by different lessors, and judgment is rendered, in each action, for the plain.tiff, what effect will the entry of the lessor upon the *34 land recovered, in pursuance of his judgment, if his suit was commenced last, have upon the rights of the lessor who first instituted suit ? Will it be unlavVful for the' lessor who first sued, to turn the other out, by the habere facias against the defendant to both suits ? If each lessor asserted a different title against the tenant in possession, and if the tenant holds adversely to the titles thus asserted, and is not privy to or connected with either of the titles, we think tjiat the' lessor who obtained possession under his judgment first, could not be dispossessed in virtue of a habere facias against the tenant, in favor of the lessor, in the other action. The rights of such claimants ought to b'e tried, in a suit to which they were parties, before either should molest the other, gaining possession under a judgment against the lerreienani. Such, however, is not the attitude in which Chiles is presented. He claims the same title under which Conley entered, and to which he and his heirs owed allegiance. His claim to this title is founded on a purchase from the heirs of Hays, made subsequent to the Institution of the suit by H. Smith in 1S14, and after they had moved the court to permit them to defend the title' with Conley’s heirs. The possession of Conley’s heirs was not adverse to the title asserted by Chiles, but in support of it. Under these circumstances, we regard Chiles as a pendente lite purchaser from the landlord of the tenants in possession, and-consider him equally bound by the judgment which Smith obtained. His judgment can, therefore, have no effect to aid his recovery in this action. He cannot couple his possession with that of Conley’s heirs, and, by the union, make oiit twenty years contined adverse possession in himself and those under whom he claims, so as to destroy the right of entry founded on Moore’s patent, and to create for hitnself a right of entry. The retro-1 active force of Smith’s judgment effectually breaks the continuation of the possession under the claim of Hays, and leaves those holding under it destitute of the protection afforded by the statute of limitations.
A purchaser,' pendente lite, irom the landlord of tenants sued iu ejectment, is hound hy the judgment, for, or against, them.
Where there is a subsisting right of entry under the elder grant, there can ,be no recovery by those claiming under, the junior grant.
*34 We have failed to discover in the record.any foundation for the verdict and judgment, growing out of *35 the supposed continued adverse possession of those claiming the land in contest under the patents of Hays. Under this view of the case, it is unnecessary to decide whether the deed of partition, as it is called, be sufficient to pass the title from Moore. If it be not, still the claimants under the junior grants cannot prevail against those in possession when there is a subsisting right of entry under the elder grant'. Such right of entry subsists here, owing to the manner in which the continuation of the possession has been broken.
A sale of land for which the vendor has recovered a final judgment — tho’ theland remains in the possession of the defendants,the/ia. fa., not being executed, — is not within the champerty act of 1824 — the. sale is not of a mere “pretenced title,” and is. valid.
There is another ground assumed by Chiles, in support of the verdict and judgment, which must be examined. In August, 1830, Chiles, at a sale made by the sheriff, under a judgment and execution against Hardage Smith, became the purchaser of the land in contest, or the greater part-tbereof, and', in September, the ' sheriff executed a deed of conveyance to Chiles. If Hardage Smith, at the time of this sale, had a valid title to the land, under the senior patent to Moore, it , Would follow that the verdict and judgment, in this action, were right, so far as they affected the land embraced by the sheriff’s deed. The appellant, Jones, contends, that Smith had no such title at the time of the sale, because he had, in 1826, conveyed all the land in controversy to him. To this "Chiles replies, that the deed made to Jones, in 1826, is void, being in violation of the law against champerty and maintenance, because when it was executed the land was in part pos'sessed adversely by Conley’s heirs. To this Jones rejoins, that no part of the deed of 1826 is void, because at the time it was executed, much the greater part of •the land was in the actual possessiori of Smith, or those claiming under him, and because he then had a judgment for the recovery of an unexpired term, covering the lands occupied by the heirs of Conley, and which was afterwards enforced by writ of habere facias.
We think the deed to Jones, executed in 1826, is not void under the act of 1824 relative to champerty and maintenance The object of that act was to prevent speculations in “pretended” titles, whereby purchasers were enabled to harrass occupants with law suits. Nei *36 ther the letter nor policy of the act embraces a case where the vendor has already litigated the title with the occupants,-and obtained a verdict and judgment in his favor, and’which have been acquiesced in so long that they are irreversible by the prosecution of a writ of error. A title thus settled by the judgment of a court of justice cannot, with propriety, be called a “pretended title.'1'1 Nor can we perceive any motive or object which could have influenced the legislature to prohibit the sale and conveyance of a tract of land recovered by the final and irreversible judgment of the court, until after the dispossession of the tenants, by the execution of the writ of habere facias. We conclude, therefore, that the deed executed to Jones, in 18?S, was not void to any extent, and that whatever title Smith then had passed to Jones, and consequently the sheriff’s levy and sale were altogether inéffectual. It is unnecessary to consider and decide the question whether a deed of conveyanee be totally void when a part of the land 'is ad verseJy held at the time. If such a deed be good for so , , , ° , much of the land as is possessed by the venuor, and vojd as t0 the residue onlv, then it would follow, in this - ’ case, that the purchase oí Chiles, at the'sheriff’s sale, could not operate on, or affect Jones’ title to the land, so far as it was actually possessed' by him, or his vendor, at the date of the deed.
&uere suggest,ed, whether the tract, part of whichisheldad versely, would bevoidasto the whole, or as to the part held adversely: not decided.
From the foregoing view of the case, we think the court ought to have granted a new trial. We deem it unnecessary to enter into a critical-examination of the various instructions given and refused. In conducting the new trial, theplaintiff’s lessors must shew that there has been with them and those under whom they claim, an unbroken adverse possession in fact, for twenty years, of all the land they recover, otherwise any judgment in their favor will be erroneous. The principles laid down are sufficient to govern the inquiry, without a particular notice of the irrelevant instructions. The court will readily perceive, from what has been said, how e,ach instruction would be disposed of by this court.
Judgment reversed, with costs, and cause remanded for a new trial.