Petition foe. a Re-hearing.
(By Mr. Apperson.)
December 14.
Entertaining, as I do, the most profound respect for the Court and their opinion delivered in this case, yet, with a thorough conviction on my part, that my views have not been fully apprehended by the Court, and as a most materia] and important question in this case, has not been adverted to by the Court in their opinion, nor by the opposing counsel in his argument; and the facts assumed in the opinion on other points, being variant from my understanding of them — a re-hearing of the case is most respectfully asked for.
I will first advert to the question, presented by the record, but not noticed in the opinion. The ejectment of Hardage Smith was not pending until July, 1816. At that term, the widow and heirs of A. Conley were admitted defendants. At the April term, 1814, the record *542 says, that it appeared to the Court, the declaration and notice thereunder written had been duly served upon the tenant in possession &c. Upon whom was it served, or what land was sought to be recovered ? Is there any evidence, that that action was intended, at its inception, to recover any part of the land now in controversy? The declaration in an action of ejectment is wholly a fiction, and the lessors do not show what particular land it is that they claim — see page 39. At the October term, 1814 — see page 40 — the Court permitted the lessors of the plaintiff to file a new declaration. Can a Court have its process, when lost, supplied, or its execution proved, without any notice or rule against the defendant? Until the case of Hutchcraft and Gentry, 7 Mon. 241, no case was to be found in which the Court had permitted process which had been lost, to be substituted; and in that case, it was not done ex parte, but by a rule of Court, of which the defendant had notice, and of course could appear and contest it; but in this case, where the pleadings, as well as the process, are lost, will the Court say that both may be supplied, and the execution of the latter proved, without giving the defendant any notice of such a proceeding? In the case of Fry &c. vs. Smith, 2 Dana, 32, this Court decided that, if the declaration in ejectment was not entered in Court on the day the notice warned the tenant to appear, and he excepted to the filing of it, that there was no cause pending, and no judgment could be rendered against him af-terwards. It is stated in the record, (page 40,) that the Court was satisfied the original declaration was served on the 18th of February, 1814. But to what term was it returnable, or to what day of such term, it is not stated. Arthur Conley never was a party to the action. The declaration and notice answer the purpose of process to coerce an appearance, and the notice should, with the certainty of an original writ, inform the tenant at what Court to appear. Beall vs. Siberls, 1 Mar. 154. In the case of Freeman against Oldham’s lessee, 4 Mon. 419, it is decided, that an acknowledgment of service, signed by the tenant in possession, when no common order was *543 entered, nor consent rule entered into, nor defendant admitted in lieu of the casual ejector, nor issue joined, nor defendant made — although the tenant appeared, and the cause progressed until the lessors obtained a judgment— the whole proceeding was erroneous. The appearance of the party in possession, and his prosecution of a writ of error, are sufficient proof of service of the notice, but the Court say it was necessary to have taken a common order to be served on the tenant in possession. In the case now under consideration, there was no Us pendens until the widow and heirs of Conley voluntarily entered their appearance; for the mere docketing of the case could not make it an action pending. Suppose Smith had taken a judgment against the casual ejector, at any time before July, 1816, could the widow and heirs of Conley have been dispossessed! Was the casual ejector, (a fictitious person,) bound to take notice of the order made at October term, 1814? or was Arthur Conley bound to do so? It seems most clear to me, that neither were bound to do so. Should the rule, in an action to recover land, be less rigid than one to recover money? We have seen what the rule is in the latter case — not by an ex parte proceeding, but.by giving a defendant an opportunity to contest the matter. I deny, moreover, that a new declaration and notice in an action of ejectment can be substituted for one that has been lost. No authority can be found for it, so far as my researches extend. If the action was not pending until July, 1816, Or even until October, 1814 (when the order was made,) twenty years had run as tb a portion of the land, and the plaintiff ought now to recover in this action.
As to the facts of the case — they are decidedly variant from the case when it was first in this Court. The testimony of French, and that of Steen, Mrs. Bridges and Lockridge differ from what is stated in the bill of exceptions in the first case, and by an examination of the record in that case, the points of difference will be seen. There are also other material witnesses in this case, that were not examined in that — Berry for one. The reasons for the decision in this case, as to the Mayberry place, *544 are of a different character from those in the first case» There, it was assumed, that Bridges had the legal title from Hays. Now it is proved that he held by bond.
The testimony of James French is materially variant from what it was in the first trial. At that time, he did not speak of the possession being taken by Hancoek, of a particular third part. Is there any evidence, of the slightest shade, which goes to prove that Hancock intended to take any other possession than the one third at the lower end of Moore’s kwo thousand acres? Whose evidence conduces to prove any such intention? He had no interest except what he acquired from French, and if he intended to take possession of the lower third only, was he in possession of the other two thirds also? If Hancock did not take nor intend to take, any further possession than the lower one third, was French, or any one under Moore, in possession otherwise than Hancock? Although there was no exact boundary to Hancock’s possession, yet it was to be bounded by a line running par-rallel with the lower line so as to include the six hundred and sixty six acres.
The seventh instruction asked by the plaintiff is be- , lieved to be law. It is materially variant from the ninth and tenth. It was however overruled, and if it be the law, the case should be reversed.
The ninth instruction of the defendants, which was given, it is conceived is not law. Twenty years adverse, uninterrupted possession, gives a right of entry, whether elder or junior, and the jury may have been misled by the instruction; they were told that, although the lessors may have had a twenty years adverse, uninterrupted possession it would not avail, unless that possession was elder.
The Conleys, (the defendants in the Smith case,) having recovered their purchase money from Plays, have long been acting in concert with the defendants in this case. The heirs of Hays, ruined by being compelled to refund to Bridges, Conley and others, the purchase money for the land which their father had sold, have long since left the State, and are in penury and want. It is *545 believed that Smith obtained his judgments by fraud and combination with the tenants then in possession.
in an eject, the s&le °f which was Den, ex dem. H. S. vs. Fen’ *•.*• A- c< tenant m possession,” the first and recites that, th e sS'íereoreí in possession w¡t¡, a copy q.c% tbe common order was entered At the next term b_ut one> an °r" der was made, stating that the Sen ghfingthe pltf. leave to file diSng^hecPk to indorse it,that servMontheisth Feb. 1814— ceedinV^terms^ tbe cause was continued ore «to Hon of the deft; ??<i,at ‘he third, his death was sug gested,anda$c£. fa. allowed against his heirs; by whom, with the heirs of their father’s vendor, the suit was defended for ■several years, and till judgment against them was recovered; during all which time the truth of the indorsement upon the new dec’n,that ‘the original was served on the 18th Feb. 1814,7 does not appear to have been controverted: Held, that the record proves sufficiently (in another eject, commenced in 1881,) that the dee’n was served and the action commenced on the 18th Feb. 1814, and conclusively that it was commenced before the 15th April, 1814.
They are now seeking redress; and although their case has been twice to this Court before, yet if the law be on their side, they deserve to have it administered to them.

Jlpperson for plaintiffs.