Chief Justice Simpsok
delivered the opinion of the Court.
Thomas D. Chiles, brought this suit in chancery to have a partition of some land within the boundary of William Hoys patent of fourteen hundred acres. He claims under Hoys heirs five-sevenths of the land formerly owned by John Evalt, and which was sold and conveyed by the latter to James Trabue; and also five-sevenths of the land conveyed by an individual by the ‘ name of Jones, to Nicholas Smiths sen. He asserts title to some other land within the aforesaid patent boundary; but as a Court of Chancery, has no jurisdiction, upon the matters set' forth in thejjbill, except for the purpose of decreeing a partition, it is unnecessary to advert to any part of his claim, but that already alluded to, which embraces the two pieces of land above mentioned.
The Court decreed a partition, giving to Chiles five-sevenths of both of said pieces of land. From that decree the defendants have appealed, and deny his right to any part of the land claimed by him.
It appears that William Chiles, as early as the year *349 1821, by virtue of a decree in a suit in Chancery in the Bourbon Circuit Court, which he had previously instituted, against the heirs of William Hoy, obtained a deed of conveyance for seven hundred acres, of the land included in Hoy’s patent, and became thereby invested with the title of Hoy’s heirs to that part of the land, tie was subsequently required by a decree of the Circuit Court of the United States, for the district of Kentucky, to convey to the heirs of Thomas Boone, all the land conveyed to him by said commissioner, and under the last mentioned decree, and in execution thereof, a deed was made by a commissioner, conveying not only the interest of William Chiles, in the seven hundred acres, but also in the residue of the fourteen hundred acres. The deed however, was effectual only so far as it was authorized by the decree. To that extent it was valid, notwithstanding it purported to convey to the heirs of Thomas Boone, other land besides that which the commissioners had power to convey, by virtue of the decree. Boon’s heirs also obtained a decree, and a conveyance in pursuance thereof, for the same seven hundred acres of land, in the Bourbon Circuit Court, in which suit William Chiles, and the heirs of William Hoy, were defendants. By these proceedings, William Chiles, and Hoy’s heirs, were divested of all title to the seven hundred acres of land, and every part thereof. And( as Thomas D. Chiles, the complainant asserts claim to the land in controversy, by virtue of a title derived from William Chiles, and Hoy’s heirs, since the institution of the aforesaid suits, by the heirs of Thomas Boone, it is obvious that he has no available, title to any of the land within the boundary of the seven hundred acres. For if he procured any part of his title, before the final decrees in the suits brought by Boon’s heirs, he is bound by those decrees, as a purchaser pendente lite, and so far as he obtained deeds from any of the parties subsequent to the date of the commissioners deeds, no title passed thereby, to any part of the seven hundred acres.
*350 The decree of the Court below is therefore erroneous so far as the lands formerly belonging to Evalt and Jones are included within the boundary of the seven hundred acres. But as some part of both the tracts seems to lie outside of the seven hundred acres, and inside of Hoy’s patent, it becomes necessary to consider Chiles’ right to a partition of that part.
These two pieces of land appear to have been originally settled under a claim in the name of Flournoy, and were held adversely to Hoy’s title. This adverse possession had been continued for more than half a century when this suit was commenced. The statute of limitations having been relied upon by way of de-fence's a complete bar to the claim asserted by Chiles, unless he can derive some aid from a judgment in an action of ejectment brought by Hoy’s heirs for this land in 1817, and thereby avoid the bar relied upo'n by the defendants.
In the action of ejectment alluded to, a judgment was recovered in 1818 for five-sevenths of the Evalt tract of land, and also for five-sevenths of the tract of land conveyed by Jones to Nicholas Smith. In 1845 a writ of habere facias possessionem issued upon said judgment, and was executed by the sheriff, by delivering to the complainant, Thomas D. Chiles, possession of one undivided seventh part of the land formerly in the possession of Nicholas Smith, sen., and five-sevenths of all the land formerly in the possession of Thomas Evalt.
To preclude Chiles from deriving any benefit from the judgment in ejectment, it is alleged that it was procured by fraud, and should be disregarded. Before the judgment was recovered, a contract had been made between William Chiles, Nicholas Smith, sen., and others, by which Chiles agreed to sell to these parties, at a stipulated price, the land in their possession, and to convey to them Hoy’s title to it. It is said^that it was a part of the agreement, that no defense should be made in the action of ejectment, which,-although in the name of Hoy’s heirs, was conducted by Chiles, for *351 his own benefit; and that, as to the tract of land sold by Jones to Smith, and as to the land in the possession of Evalt, it is also said Chiles admitted that no recovery could be had under Hoy’s title, and that he would not attempt to obtain a judgment for either of said tracts of land; It is further alleged, that the parties in the possession of the land, confiding in these promises and declarations, made no defence in the action of ejectment, although they could have proved an adverse possession for more than twenty years before the action was commenced, of both the Jones and Evalt tracts of lands; and that,notwithstanding the agreement, which is alleged to have been made for the purpose of obtaining an advantage of them, and in direct violation of it, Chiles procured a judgment to be rendered in the action of ejectment, for five undivided sevenths of the Jones and Evalt land.
It appears that a judgment in the action of ejectment was in the first instance rendered by default, and that at the same term Smith, who claimed and was in the possession of the Jones tract of land, and Evalt himself and others appeared, and upon their motion, the judgment by default was set aside, and they were entered as defendants. At a subsequent term, a trial was had, and the judgment referred to was recovered. If no defense had been made in the action of ejectment, but the judgment had been by default, as it was first entered, we should have had no hesitation in deciding that it had been obtained by fraud. The evidence in this case proves most conclusively an adverse possession of both the Jones and Evalt land, under Flournoy’s claim, for more than-twenty years before the commencement of the action of ejectment. How it happened that a recovery was had for five undivided sevenths only, when the land was not held under Hoy’s title, and the demise was in the name of all the heirs, is an unexplained mystery, and can only be accounted for on the supposition that it was decided by the Court, upon the trial, that five out of the seven lessors of the plaintiff *352 were laboring under some disability, that saved their right from the operation of the statutory bar, although it was effectual against the other two lessors. Be this, however, as it may, the proceedings in the action of ejectment show that a defense was made, and the plaintiff’s claim defeated as to two undivided sevenths of the Jones and Evalt land, either by proof of an adverse possession, or some other fact that protected them, and barred the plaintiff’s right of recovery to that extent. The defence thus made, and the result arising from it, are inconsistent with the statement that the parties in the possession of the land relied upon the promise made by Chiles not to sue for that part of the land, and repel any presumption that might otherwise exist that the judgment had heen obtained by fraud, consequent upon the false security produced by a reliance on the promises of Chiles, which had been violated and disregarded by him.
A judgment in ejectment does not change the possession nor preclude relying upon the statute of limitations, if unless the possession b e changed by surrender, or exe-cutory of a writ of possession.
Another objection made to the efficacy of the judgment in affording any aid to the complainant in avoiding the operation of time upon his right, arises out of the failure to change the possession, by its instrumentality, until more than twenty years had elapsed after it was rendered. Subsequent to the execution of the writ of habere facias, that issued in 1845, a motion was made by the defendants therein to quash the writ and the sheriff’s return, which was overruled, and one of the grounds upon which the motion was based, was the same now relied upon in this objection. The point having been once made and litigated between the parties, and regularly adjudicated upon by the proper Court, and the judgment in that case not having been reversed, must be regarded as settled, and cannot be again re-litigated between the same parties. Besides, the question is one that cannot with propriety be made collaterally in this suit, but should be made, as was done, by a direct proceeding to quash the writ, and to have restitution of the possession.
But in this suit Chiles cannot derive any advantage *353 from the judgment in ejectment, except so far as he has obtained, by virtue of it, the possession of the land in contest. The recovery of the judgment in ejectment did not of itself change the character of the possession held by the defendants in that action; nor does it have the effect of precluding them from relying upon the statute of limitations in this suit. So far as Chiles obtained the possession of the land, in pursuance of the judgment in ejectment, he can derive aid from the judgment, and avail himself of the possession thus acquired to defeat the operation of the statute of limitations, but no further. As to the remainder, the statutory bar pre* vails, and effectually destroys all right to relief. And as the demise in the declaration has expired, he can derive no farther aid from the judgment.
A paper not named in the pleading, hut filed with the brie) of counsel, cannot be regarded as port of the record of the cast.
The sheriff’s return on the writ of habere facias shows that the complainant Chiles only obtained possession of one undivided seventh part of the Jones tract of land, and five undivided sevenths of the Evalt tract. The counsel of Chiles has filed with his brief a paper purporting to be a copy of a writ of habere facias that issued upon said judgment in ejectment in the year 1844, with a return of the sheriff indorsed thereon, that he had “delivered to William Chiles possession of all the lands outside and north of the 700 acres as original! y laid off and decreed to said Chiles.” Rut this paper cannot have the effect to enlarge the right of the complainant, Thomas D. Chiles, for several reasons. In the first place, it does not form a part of the record, having been brought up by certiorari, and therefore cannot be considered as belonging to the case now before the Court. In the next place, the complainant did not set up in the pleadings and rely upon any possession that had been acquired by William Chiles under the judgment in ejectment, but relied exclusively upon that which he had himself acquired under it, and therefore .the writ of possession, if it constituted a part of thfc ■record, would not sustain any claim asserted by him-
Land for which there is a judgment In eject-mem, which may be enfoiced, may be sold and conveyed, without violation of the champerty Jaw, (Chiles vs Jones, 2 jjana, 25->
All persons interested, are necessary parties to a suit for .partition.
The defendants had a right to have this matter, if relied upon, presented in such a form that they could have responded to it, which not having been done, it is entirely extraneous, and must be disregarded.
If however, the complainant’s right toa partition, so far as he has obtained possession of the land, by an enforcement of the judgment in ejectment., is not affected by the adverse possession of the appellants, it is contended, that to entitle him to a partition, even to that extent, he must make it appear that he is invested wnh the title of Hoy’s heirs, and various objections are made to his title. It is argued that no title passed by any of the conveyances, except the one made by the sheriff, because the land conveyed was in the adverse possession of the defendants at the time the deeds were executed. But as the land had been recovered by Hoy’s heirs before the deeds were made, the case is not within the operation of the champerty law, if the judgment in ejectment was inforcible at the time, notwithstanding the possession was adverse, as this Court decided in the case of Chiles vs Jones, 2 Dana, 25. The doctrine established in that case does not apply, where the adverse possession has continued, until the judgment in ejectment, for some cause, has become unavailing; but in this case, the judgment has been enforced, and of course the doctrine must have its full application. Besides, some of the deeds were executed after tne sheriff had delivered the possession of the land to the complainant, at a time when no adverse possession existed, and they would be valid, if the others were not.
It does not appear from anything contained in the record, that the wife of John Sappington ever conveyed her title to any person, nor is she named in any of the commissioners’ deeds, nor in the deed made by the sheriff, although he was one of the heirs of William Hoy, deceased. But as Hoy’s heirs, or those holding under them, had title to so much of the land in contest as was outside of the 700 acres decreed to Boone’s heirs, and as the complainant was invested with the title of part of the heirs, he had a right to take posses' *355 sion of the land, for the joint benefit of himself and the other heirs; and so far as he obtained the possession, he' and they have a right to have partition ; but unless he can exhibit a title from all the heirs, it will be necessary to make other parties to the suit, as the heirs who have not been divested of their title, should be brought before the Court.
Davis and Trimble for plaintiff; Chiles for defendant.
As, however, the complainant’s evidences of title are rendered somewhat ambiguous by the failure to make it appear, in the copies of the decrees exhibited, which of the heirs of Win. Hoy were made parties to the suits in which the decrees were pronounced, the complainant will be allowed, upon the return of the cause, to produce such other additional evidence of title as he may deem proper; and unless he shall be able to manifest a complete title in himself, he must make such of the heirs parties as still retain the title, but they are to be brought before the Court, merely for the purpose, and no other, of authorizing a partition to be made, by, which they, together-with the complainant, will obtain one undivided seventh part of the Jones tract of land, and five-sevenths of the Evalt tract, outside of the seven hundred acres conveyed to Boone’s heirs.
Wherefore, the decree is reversed and cause remanded for further proceedings, and decree in conformity with the opinion.