THE STATE OF MISSOURI *ex rel.* THE PLANET PROPERTY AND FINANCIAL COMPANY, Appellant, v. HENRY F. HARRINGTON *et al.*, Respondents.

St. Louis Court of Appeals, May 13, 1890.

1. **Ejectment: PRIVIES TO JUDGMENT OF OUSTER.** If, during the pendency of an action in ejectment, the defendant to the suit conveys the premises sued for to a third person, who enters into possession under the title thus acquired, the latter may be ousted

under a judgment against his grantor in that action even though, subsequent to such entry by him, he may have acquired title paramount to that of either party to the ejectment suit.

2.   Damages: FAILURE OF SHERIFF TO EXECUTE WRIT OF POSSESSION. If a sheriff wrongfully refuse to execute a writ of possession issued under a judgment in an action of ejectment, he is liable for substantial damages. *Semble* that the measure of damages in an action for the wrong is the value of the rents and profits of the premises from the date of the return of the writ to the date of the judgment in such action, subject to possible reduction depending on the principle, that a man, who is damaged by a continuing injury, must do what he reasonably can to prevent the accumulation of damages.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*T. J. Rowe* and *H. A. Clover*, for appellant.

*E. T. Farish*, for respondents.

THOMPSON, J.—This is an action upon the official bond of Henry F. Harrington, late sheriff of the city of St. Louis, to recover damages for the refusal of the defendant Harrington, when so acting as sheriff, to execute a writ of possession, taken out upon a judgment in an action of ejectment, recovered by John H. Bobb on the sixteenth of December, 1884, against August F. Zelle, Sarah Watson and Michael Kinealy, which judgment became the property of the plaintiff by certain mesne assignments before the writ of possession was issued. The petition, after reciting the foregoing premises, states that the sheriff refused to obey the command of the writ and to deliver the possession of the premises to John H. Bobb, his grantees or assigns, but that, on the second of February, 1885, he returned the said writ wholly unexecuted; by reason of which the possession of the premises was lost to the plaintiff. The petition avers that the value of the rents and profits

was thirty dollars per month, and prays judgment for damages in the sum of twenty-five hundred dollars.

The answer admits the execution of the bond, the issue of the writ of possession and delivery of the same to the sheriff, and, after a general denial of other allegations of the petition, avers that, at the time the writ was delivered to the sheriff and up to the time when he returned the same, none of the defendants mentioned in the writ were in possession of the premises, but that the premises were occupied by one Mamie Williams, *alias* Mamie Moss, who was not a party defendant in said writ, nor claiming under any of the defendants in said writ, but who was holding the property as tenant of a party who claimed the same by title superior and adverse to any of the defendants in the writ; wherefore he refused to evict said tenant and deliver possession to the plaintiff in the execution, as well he might.

The plaintiff filed a reply, consisting of a general denial of the new matter contained in the answer.

There was a trial before the court sitting as a jury. The evidence was very voluminous, and, after all was heard, the court, at the request of the plaintiff, gave the following declaration of law : " The court declares that, upon the evidence, defendant has shown no defense in law to the action of plaintiff, and that plaintiff, upon the evidence, is entitled to recover." Thereupon the court took the case under advisement, and afterwards found the issues in favor of the plaintiff, assessed its damages in the sum of one dollar, and rendered judgment for that amount. To reverse this judgment, the plaintiff prosecutes the present appeal.

The facts, so far as we deem it necessary to state them in order to an understanding of the rights of the parties, were shown by the evidence adduced at the trial to be as follows : On the eighteenth of November, 1882, John H. Bobb brought an action of ejectment

against August F. Zelle and Sarah Watson, to recover the possession of the premises in controversy. They were occupied at that time by Mrs. Watson, as the tenant of Zelle. While the action was pending, to-wit, on the twenty-first day of February, 1883, Zelle conveyed by a deed of quitclaim all his right, title and interest in the premises in question to Michael Kinealy. Such proceedings were had in that action that, on December 1, 1883, Michael Kinealy came and moved the court to be admitted as an additional party defendant in the cause, on such terms as might be just, for the reason that on the evidence it appeared that the defendant Zelle had conveyed all his interest in the premises in question to Kinealy, and Kinealy desired to be admitted "to defend for himself *or his grantees*, as being the only persons interested." The only grantee of Kinealy of the premises in controversy, existing at the time, appeared to have been James F. McClendon, trustee for his wife, Sarah J. Kinealy, to whom, on the third day of March, 1883, Kinealy had conveyed all his right, title and interest in the premises in controversy to be held in trust for Mrs. Kinealy, to her sole and separate use and free from his marital rights,—the deed being in the form usually employed in such cases. This deed was recorded on the fifth of March, 1883. This motion of Kinealy to be made an additional party defendant was allowed by the court. Kinealy and Zelle filed an amended answer. Judgment by default and an inquiry of damages were had against Mrs. Watson; and such proceedings were had that, on December 18, 1884, there was a final judgment against all the defendants, namely, Zelle, Watson and Kinealy, in favor of Bobb, for the recovery of the premises, and assessing the monthly value of the rents and profits at thirty dollars.

Prior to this judgment, to-wit, on the thirtieth of October, 1884, Marcus A. Wolf executed a quitclaim deed to Sarah J. Kinealy, wife of Michael Kinealy, who

was figuring as a defendant in the action of ejectment, releasing and quitclaiming to her, and to her heirs and assigns, the premises in controversy. This deed was not filed for record until May 17, 1886, long after the sheriff had returned the writ of possession in question, with his refusal to execute the same, and his reasons therefor indorsed thereon.

Subsequently to the deed made by Kinealy to McClendon, as trustee for his wife, and before this quitclaim deed had been made by Wolf to Mrs. Kinealy, Mrs. Watson, who, it will be remembered, was in possession as tenant for Zelle, and was a defendant in the action of ejectment, abandoned the possession, and Mrs. Kinealy acquired it through a tenant named Cora Wagner on June 5, 1883. Possession was held for Mrs. Kinealy by Cora Wagner until February 5, 1884. The house was vacant for some time, but in April, 1884, it was rented to Mamie Williams, *alias* Mamie Moss, who was in possession as tenant for Mrs. Kinealy, paying to her agent for her a rental of thirty dollars per month at the time when the sheriff refused to execute the writ of possession.

Restating the foregoing facts in their chronological order, it is seen that, on November 18, 1882, the action of ejectment is begun by Bobb against Zelle and Mrs. Watson ; that, on February 21, 1883, Zelle conveys the premises to Kinealy by a deed of quitclaim ; that, on March 3, 1883, Kinealy conveys the premises to McClendon as trustee for the sole and separate use of his wife ; that, on June 5, 1883, the action of ejectment pending, but Kinealy not yet made a party to it, Mrs. Kinealy acquires possession of the premises through her tenant Cora Wagner, which possession Mrs. Kinealy holds down to the time of the return of the writ of possession by the sheriff ; that, on December 1, 1883, Kinealy files his motion to be admitted as a party in the action of ejectment ; that, on October 30, 1884, Marcus

A. Wolf releases and quitclaims the premises directly to Mrs. Kinealy, without the intervention of a trustee; that, on November 14, 1884, Kinealy having been admitted as a party, upon his motion, Zelle and Kinealy file an amended answer in said action; that, on December 16, 1884, Bobb recovers a judgment in the action of ejectment against the defendants, Zelle, Watson and Kinealy; that, on the twenty-first of January, 1885, a writ of possession is issued, in conformity with the judgment, by the clerk of the court; that, on the second of February, 1885, the sheriff returns the execution, with the damages, rents and costs satisfied, but with the following return as to so much of it as commanded him to deliver possession of the premises to the plaintiff: "I further return that I declined to execute this writ by delivering possession thereunder, because I found the premises occupied by Mamie Williams, *alias* Mamie Moss, not a party defendant, nor claiming under them, or through defendants, and not in possession of the premises when the suit was instituted." On the eighteenth of January, 1888, this action is brought against the sheriff and the sureties in his official bond.

This case presents difficulties, but we do not understand upon what theory the court could rule that, upon the evidence, the defendants had shown no defense in law to the action, and that the plaintiff was entitled to recover, and then limit the recovery of the plaintiff to nominal damages. We regret that no declaration of law was given, or memorandum filed, expressing the views of the learned judge on the question of the measure of damages. We apprehend that this judgment cannot stand, unless it can be supported on the theory upon which the case has been argued in behalf of the defendants, that the plaintiff was not entitled to a judgment even for nominal damages.

As to the effect of a judgment in ejectment upon the rights of persons not parties to the action, there is

no difficulty, so far as the facts of this case are con.
cerned, upon the decided cases. In respect of persons
who were in possession at the time of the commence-
ment of the action of ejectment, and who were not
made parties to that action, the judgment in ejectment
has no effect whatever, and they cannot be ousted under
the writ of possession issuing thereon. *Garrison v.
Savignac,* 25 Mo. 47; *Georges v. Hufschmidt,* 44 Mo.
179; *Clark v. Parkinson,* 10 Allen (Mass.) 143; s. c.,
87 Am. Dec. 628. But this principle has no application
to the present case, for Mrs. Kinealy was not in posses-
sion, either by herself or by her tenants, at the time of
the commencement of the action of ejectment. It is
laid down by a writer of reputation, as a general rule
admitting of no exceptions, that, after the recovery of
a judgment in favor of the plaintiff in an action of eject-
ment, the defendant or defendants, and all those in
privity with him or them, may be dispossessed under
the writ of possession issued therein. Freeman on
Judgments, sec. 171; Freeman on Executions, sec. 475,
citing numerous cases. Difficulty in many cases arises
in determining who are to be deemed privies within the
meaning of this rule; but the courts have found no
difficulty in holding that those are to be considered
privies who have entered under, or acquired an interest
in the premises from or through, or who have entered
without title by collusion with, defendants in the action
of ejectment, subsequent to its commencement. All
such persons are bound by the judgment, and may be
dispossessed by the execution. *Satterlee v. Bliss,* 36
Cal. 489. It has also been held that tenants who enter
under other tenants, on whom notice of the pendency
of the action of ejectment has been served, are liable to
be dispossessed under the judgment rendered therein.
*Smith v. Trabue,* 1 McLean ( U. S. ) 87; *Long v. Neville,*
29 Cal. 131; see, also, *Walden v. Bodley,* 9 How. ( U. S.)
34. By analogy to the doctrine of *lis pendens,* which

rests on grounds of public policy ( *Turner v. Babb*, 60 Mo. 342 ), it has been likewise held in numerous cases that one who purchases the land pending an action of ejectment, and who enters under a defendant in such action, either as vendee, lessee or otherwise, is bound by the result of the judgment, and is liable to be dispossessed thereunder. *Jones v. Chiles*, 2 Dana, 25 ; *Jackson v. Tuttle*, 9 Cow. 233 ; *Wallen v. Huff*, 3 Sneed. 82 ; *Walden v. Bodley*, 9 How. 34 ; *Long v. Morton*, 2 A. K. Marsh, 40 ; *Hickman v. Dale*, 7 Yerg. 149 ; *Satterlee v. Bliss*, 36 Cal. 489 ; *Wattson v. Dowling*, 26 Cal. 124 ; *Sampson v. Ohleyer*, 22 Cal. 200 ; *Mayne v. Jones*, 34 Cal. 483 ; *Hanson v. Armstrong*, 22 Ill. 442 ; *Howard v. Kennedy*, 4 Ala. 592 ; s. c., 39 Am. Dec. 307.

If there could be any doubt whatever about this principle, it is clearly settled in this state by the decision of our supreme court in *Atkison v. Dixon*, 89 Mo. 464. There, a recovery had been had in ejectment, and, pending an appeal to the supreme court, the plaintiff had been put in possession under the judgment. While the action of ejectment was pending in the circuit court, the plaintiff's son had procured from the plaintiff a deed of quitclaim for the premises. The plaintiff's son also acquired an outstanding title from one who had purchased the land at a tax sale. The judgment in ejectment was reversed by the supreme court. After the mandate of that court went down, an execution was issued, directing the sheriff to reinstate the defendants in possession. Thereupon the son of the plaintiff in the ejectment suit filed his petition for a restoration of the premises to himself ; alleging that, at the date of the ejectment, he was, and for a long time previous had been, in possession, by himself and by his tenants, claiming the premises by a title paramount to that of either his father or the defendants in the ejectment suit, by a purchase at a sale of the premises for taxes. The supreme court said : " With regard to his alleged

paramount title, if he had one, that was not affected by the judgment in the ejectment suit to which he was no party. He was, however, bound by that judgment, so far as the title he derived from John Atkison ( his father, the plaintiff in the ejectment suit ) *pendente lite* is concerned. * * * The only matter for determination, on that petition, was whether the petitioner was in possession under the parties to the action. The judgment is binding upon no one but ' the defendant and those claiming under him or in privity with him.' *Smith v. Pretty*, 22 Wis. 655. The writ of possession cannot be executed against one claiming under a paramount title. If it were otherwise, two persons might collude together, the one to institute his suit in ejectment against the other, and the latter, never in possession, to suffer a judgment to go against him, and, on an execution, the occupant be turned out of possession and driven to his ejectment. R. A. Atkison ( the son and petitioner) was not the purchaser at the tax sale, but the assignee of the purchaser. * * * Under his title, whether good or bad, he claimed a paramount title to, and possession of, the land, and the only question left for consideration is, whether holding a quitclaim deed for a lot from R. A. Atkison ( a clerical error for John Atkison, the plaintiff in the ejectment suit ), but not getting possession from him under that deed, he could take an assignment of the certificate of purchase from the purchaser at the tax sale, and a deed from the sheriff, and thereby acquire a distinct title independent of that acquired from John Atkison ; or must he be held to occupy the position of an owner who redeems his land from taxes, or purchases his own land at a tax sale." ' The court then examined the authorities with reference to the question, whether it was possible for R. A. Atkison to acquire a title paramount to that of his father, the plaintiff in the action of ejectment, by buying up an outstanding tax title, and

it was held that it was. The opinion of the court then proceeds : " The duty of the circuit court was simply to determine, under plaintiff's petition, whether he was in possession under his quitclaim deed, or under his tax title ; *and, if the latter*, then to restore him to the possession and nothing more." The judgment of the circuit court on this petition having been reversed and the cause remanded to the circuit court, that court, upon the filing of the mandate of the supreme court, proceeded to determine the question of the intervenor's title, and found that he took possession under the quitclaim deed from his father, the plaintiff in the action of ejectment, and was not, therefore, entitled to the relief prayed for by him. This judgment, on a subsequent appeal, was affirmed by the supreme court. *Atkison v. Dixon*, 96 Mo. 577. The decision of the supreme court in this case, upon these successive appeals, must be regarded as authority for the proposition that one, who acquires possession of premises, the title to which is in litigation in an action of ejectment, under a deed from a party to that action, is bound by the judgment therein rendered, and is subject to be ousted thereunder, although he may have strengthened the title so acquired by buying up an outstanding title, which is paramount to the title under which either of the parties in the action of ejectment claims. This, stating the case most strongly for her, was exactly the situation of Mrs. Kinealy in respect of the judgment under consideration. Pending the action of ejectment, and before he had been made a party to it, her husband acquired title to the property through a deed of quitclaim from Zelle, one of the defendants in the action. Thereafter her husband conveyed whatever title he had thus acquired to McClendon, as her trustee, to hold the same for her sole and separate use, free from the marital rights of her husband. Pending the action of ejectment, and under the title thus acquired from the

defendant in that action through her husband, she entered into possession. While so in possession, and before the judgment in the action of ejectment had been rendered, she attempted to strengthen her title by acquiring from Wolff a deed of quitclaim, conveying to her the same premises. Assuming that this subsequently-acquired deed would feed the estoppel created by the previous deed of her husband to her trustee, so that this subsequently-acquired title would vest in her, free from the marital rights of her husband, it nevertheless remains that, as she entered under a title acquired from one of the defendants in the action of ejectment, she could not thereafter, pending that action, free herself from privity with the same, and from the obligation of being bound by the judgment in the same, by buying up an outstanding title, any more than Zelle could have done so. It is plain to us then that the circuit court was right in holding that the evidence adduced by the defendants showed in law no defense to this action.

But we cannot accede to the view of the circuit court that the plaintiff was entitled to no more than nominal damages. He was kept, by the refusal of the sheriff to execute his writ, out of the possession of the property, the right to which possession he had acquired at the end of a long contest in the court. If it is said that he ought to have tendered the sheriff a bond of indemnity, when the sheriff found the premises in possession of a person claiming under a title paramount to any of the defendants in the action of ejectment, a good answer seems to be that the sheriff had already taken a bond of indemnity from Mrs. Kinealy. This the plaintiff offered to prove, but the court ruled the evidence out as immaterial. In view of the conclusion of the court that this was a case for nominal damages only, it seems to us that the evidence was material. It is difficult to see how the sheriff could consistently take a bond of indemnity from both parties.

But it is argued that the plaintiff might have sued out an *alias* writ. If the duty of the sheriff to execute his original writ was clear, we do not understand on what ground it lies in the mouth of the sheriff to say: "Although it was my duty to execute your original writ, yet you cannot have more than nominal damages, because you might have sued out an *alias* writ." As the sheriff, by taking a bond of indemnity from Mrs. Kinealy, had impliedly obligated himself not to execute the writ as against her tenant, it does not appear that the suing out of an *alias* writ would not have been equally futile. In what better position would the plaintiff have stood with an *alias* writ in the hands of the sheriff, the same state of facts existing as before, than he occupied when the original writ was in his hands?

Nor do we understand on what principle the sheriff can say, where his duty to execute the process of the court is clear, that he is not bound to pay substantial damages for refusing to execute it, because the plaintiff in the writ might have applied to the court for an order upon him to do his duty.

It follows from what has been said that the judgment must be reversed. In order that the expense of another trial may be in part avoided, we suggest that, under the view we have taken, the answer states no defense to the action; because, while it states that Mamie Williams, *alias* Mamie Moss, whom the sheriff found in possession was not a party defendant in the writ, nor claiming under any of the defendants therein, but, holding said property as a tenant of a party who claimed the same by title superior and adverse to any of the defendants in the writ, it fails to state the party, under whom Mamie Williams, *alias* Mamie Moss, claims, entered either prior to the commencement of the action, or entered since the commencement of its action under a title paramount to that of any of the

parties defendant therein; in other words, because it fails to negative the essential ground on which the right of Mrs. Kinealy to hold the premises, notwithstanding the judgment, alone could rest,—that, having entered pending the action, she did not enter under a title derived from a party thereto. We, therefore, remand the cause to the circuit court for the mere purpose of assessing the damages. The question of the measure of damages has not been much discussed and we do not feel called upon to go into it without the aid of counsel. We suggest, however, that the measure of damages, *prima facie*, would seem to be the value of the rents and profits of the premises, from the date of the return of the writ until the date of the judgment to be rendered herein subject to possible reduction, depending on the principle that a party who is damaged by a continuing injury must do what he reasonably can to prevent the accumulation of the damages.

The judgment will be reversed and the cause remanded, with instructions to proceed in conformity with this opinion. All the judges concur.