EDWARD FRANKLIN v. THOMAS DORLAND.

ESTOPPEL BY DEED.—A deed of land executed by a defendant in an action of eject-
ment, to which the plaintiff in the action is an entire stranger, cannot operate in
that action as an estoppel by deed upon the defendant who executed it.

ESTOPPEL IN PAIS.—If it does not appear that the description of the land was inserted
in a deed with a view to influence the plaintiff in the conduct of his own affairs,
or that he was influenced by it in fact, the elements of an estoppel *in pais* are
lacking also.

DISCREPANCY IN THE DESCRIPTIONS IN A DEED.—In case of a discrepancy between the
monuments mentioned in a deed, and the courses and distances therein set forth,
the monuments govern.

RECITALS IN A DEED AS EVIDENCE.—If a deed executed by one of the parties to an
action, and to which the other party is an entire stranger, is used as evidence in
that action, its recitals can only be used as simple admissions made by the party
by whom it was executed.

WHEN THE VERDICT IS AGAINST EVIDENCE.—In a trial in an action of ejectment upon
a question of boundary, the testimony of five unimpeached witnesses stood opposed
to the description contained in a deed to which one of the parties was a stranger,
the Court found the fact as recited in the deed.    *Held*, that the finding was so far
opposed to the evidence as to justify awarding a new trial.

DEFENSE IN EJECTMENT BY GRANTEE AGAINST THE GRANTOR.—If one who is not the
owner of a lot of land executes a deed of it to another, and the grantor is after-
wards placed in possession of the lot by the real owner, he may avail himself of
this fact as a defense in ejectment brought against him by the grantee.

GRANTOR MAY DISSEIZE GRANTEE.—If the grantor in a deed takes adverse possession
of the land granted subsequent to his deed, and holds continuous adverse posses-
sion for five years, he may set up the Statute of Limitations as a defense in an
action of ejectment brought against him by his grantee.

APPEAL from the District Court, Twelfth Judicial District,
City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Edward Tompkins*, for Appellant.

It will hardly be pretended that a quitclaim in 1854 by a party who in 1863 is in possession adversely and making improvements, will exempt a purchaser *of the interest* of the first grantee from inquiring by what right the property is now held. If Dorland's deed had been bargain and sale, another rule might apply; but a mere quitclaim would not prevent his acquiring any other title the next day, and if it was better than the other, holding the property even against his own deed. (*Clark* v. *Baker*, 14 Cal. and cases cited; 2 Smith's Leading Cases, 547, 550; *Landers* v. *Bolton*, 27 Cal. 104; *Clarke* v. *Huber*, 25 Cal. 593; *Hunter* v. *Watson*, 12 Cal. 363; *Lestrade* v. *Barth*, 19 Cal. 675.)

It is claimed, however, that the recital in the Debus mortgage, that the Groat lot was two hundred and fifty feet from Coater's land, *estops* Dorland from denying it. But estoppels never apply except between parties and privies. Plaintiff is neither. They must be mutual to bind either. (2 Smith's L. Cases, 568; 2 Johnson's R. 383; 3 Johns. Cases, 303.)

*Edward F. Head,* for Respondent.

The words "*remise, release, and quitclaim,*" where an intent to convey the estate of the grantor is manifest, and a pecuniary consideration appears, are effectual as words of bargain and sale, though in a deed to one not in possession. (10 Johns. 456; 18 Johns. 60, 78; *Lynch* v. *Livingston*, 6 N. Y., 2 Seld. 422; *Lynch* v. *Livingston*, 8 Barb. 463.)

In *Clark* v. *Baker*, 14 Cal. 613, this Court says: "Where it distinctly appears upon the face of the instrument, without the presence of the covenant of warranty, either by recital or otherwise, that the intent of the parties was to convey and receive respectively a certain estate, the grantor will be estopped from denying the operation of the deed according to that intent."

A grantor cannot set up the Statute of Limitations against his own deed. His deed explains his possession, and is a declaration that the title is in another. (*McCracken* v. *San Francisco*, 16 Cal. 636.)

By the Court, SHAFTER, J.

This action was brought to recover the pieces or parcels of lands in San Francisco described in the complaint and referred to throughout the case as parcels 1, 2 and 3. The plaintiff had judgment for the first and third parcels and the defendant for the second. The defendant appeals from the judgment in favor of the plaintiff for the first and third parcels and from the order denying his motion for a new trial. No appeal has been taken by the plaintiff from the judgment against him for the second parcel.

The answer denies the right of the plaintiff to the several lots—sets up title in the defendant and adverse possession of the first parcel for more than thirteen years, and title in Samuel Crim and adverse possession of the third parcel for thirteen years, and that defendant is not and has not been in the possession thereof except as the tenant of said Samuel Crim.

The defendant quitclaimed the first parcel sued for, to Groat, June 12th, 1854; who quitclaimed to Robles in 1856, who, on the 20th of March, 1863, conveyed to the plaintiff. The north line of the parcel was described in the plaintiff's deed to Groat as follows: "Commencing at a point on the west line of Dolores street, in said city, where it is intersected by a post and rail fence designed for pickets, along which is planted a row of cottonwood trees." The location of this row of trees was one of the governing questions of fact controverted by the parties at the trial. The defendant introduced five witnesses all of whom placed the trees on the line claimed by him; and the one witness who located them in the first instance according to the views of the plaintiff by whom he was called, after hearing the witnesses for the defense, went voluntarily upon the stand and so corrected his first statement as to bring it into substantial agreement with the testimony given by them. All of these witnesses were acquainted with the locality; none of them were impeached, nor is there anything in the record reflecting in the slightest degree upon their trust-

23

worthiness. The only·evidence relied upon in rebuttal, was found in a mortgage executed by the defendant Dorland to one Debus, in August, 1856. The premises covered by the mortgage are described therein as follows : " Commencing at a point on the western line of Dolores street, formed by the intersection of the southern line of lands owned by J. P. Coater with said Dolores street ; thence running southerly on said line of Dolores street two hundred and fifty feet, to lands recently deeded by the party of the first part to R. V. Groat ; thence at right angles," etc. It is conceded, if the northern line of the lot conveyed by the defendant to Groat in 1854— that is, the row of cottonwood trees—was in fact two hundred and fifty feet south of the starting point named in the mortgage, that the lot so conveyed to Groat in 1854 ·is the one described in the complaint.

It is insisted for the respondent that the defendant was estopped by the mortgage from saying that the northern line of the Groat lot was not in fact two hundred and fifty feet to the south of the point where Dolores street is intersected by Coater's south line. This position is not tenable. The plaintiff is an entire stranger to the mortgage and the mortgage right, and therefore there can be no estoppel by deed ; and as it does not appear that the description was inserted in the mortgage with any view to influence the plaintiff in the conduct of his own affairs, and particularly as it does not appear that the plaintiff ever was influenced by it in fact, it is apparent that the elements of an estoppel *in pais* are lacking also. The description in .the mortgage stands then as a simple admission. If it had been proved that the defendant, having his attention called to the point as a principal question, had deliberately stated that the north line of the Groat lot was to his knowledge two hundred and fifty feet south of the Coater corner, the statement would in our judgment have been entitled to much higher consideration than can be claimed for it as it stands in the mortgage. Nothing is more common than discrepancies between the monuments and the courses and distances set forth in deeds. In such cases the monuments

govern; and for the reason that they are usually stated upon full knowledge and reflection, while as to courses and distances they are most frequently arrived at by estimate or guess in all those cases where visible monuments are named. For these reasons we consider that the admission contained in the mortgage to Debus does not detract materially from the weight of the testimony of the six witnesses referred to as to the location of the row of cottonwood trees named in the deed under which the plaintiff claims. We therefore hold that the finding of the Court on that point is so far opposed to the evidence as to justify the awarding of a new trial.

As to lot number three, there was no conflict in the evidence on the question of title. The plaintiff claimed under title derived from the defendant through a chain of quitclaim deeds. There was no evidence that the defendant from whom the title started was himself the owner of the lot, or that he, or the plaintiff, or any intermediate party in the chain, was ever in possession before or at the time when the deed was given. The defendant under proper allegations in his answer, introduced evidence tending to prove that he, after the execution of the deed under which the plaintiff claimed, was placed in the possession or custody of the lot as the agent of one Crim, who claimed to be, and, as the evidence tended to prove, was in fact the owner of the land. If Crim was the owner of the lot and put the defendant in custody of it after the date of the defendant's quitclaim, there can be no just pretense that the defendant could not avail himself of that state of facts to protect himself in that custody (assuming now that his custody amounted to a personal possession on his part), even though he had prior to his assuming such custody, quitclaimed the lot to Martel under whom the plaintiff claimed directly. We consider the findings in relation to this lot as opposed to all the evidence having to do with the rights of the parties with respect to it.

It appears from the record that the "defendant offered to prove by legal and competent testimony that he had been in the open, notorious and adverse possession of the Groat lot for.

more than five years next preceding the commencement of the action." The plaintiff objected to the evidence generally, and it was excluded by the Court. The counsel for the respondent seeks to justify this ruling on the broad ground that a "grantor cannot set up the Statute of Limitations against his own deed." We consider that a grantee can, under circumstances, be disseized by his own grantor as well as by another. In the matter of an adverse possession taken by a grantor subsequent to his *deed*, and continuously held thereafter, the possession is not the possession of the grantee's "predecessor," as that term is used in the sixth section of the Statute of Limitations. The effect of that section is to allow a grantee to tack to his own the possession of his grantor preceding the grant, for the purpose of working out a bar against him who has the legal title.

The terms of the offer in this case were of the broadest, and if the maker of a quitclaim deed can under any conceivable state of facts hold the premises quitclaimed adversely to the party to whom the deed is given, then the ruling was erroneous. We hold such adverse possession to be possible in law, and that is the only point raised upon the record for review.

Judgment reversed and new trial ordered.